+

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHERIE WHITE,                                          No. CIV S-03-2080 CMK

                              Plaintiff

        vs.

J.A. SUTHERLAND, INC dba TACO
BELL # 2463; TACO BELL CORPORATION; and
DOES 1 through 10,
                              Defendants.

ORDER

_____/

        On February 2, 2005, the parties entered into a consent decree, which dismissed

plaintiff's claims for violations of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

(hereinafter ADA) and California state law with prejudice.  This proceeding is before the

undersigned pursuant to Local Rule 72-301, in accordance with 28 U.S.C. § 636(a)(5) and (c).[1]

---

[1]A review of the docket shows that only the defendants filed a consent to proceed before a magistrate judge.  However, in his February 2, 2004 order of reassignment, Judge Garcia noted that the parties, in their written status reports, requested that this case be reassigned to a magistrate judge for all further purposes and recommended that the case be referred to the magistrate judge for all further proceedings and final entry of judgement.  (Doc. 13.)

This matter is currently before the court on plaintiff's motion for an award of attorney's fees pursuant to provisions of the ADA and California law.  The undersigned took this matter under advisement and decides the matter based on the papers and pleadings filed herein. Also before the undersigned are plaintiff's requests that the court take judicial notice of several orders from the Eastern District of California.  The court grants plaintiff's request and takes judicial notice of these orders.

## I.    Background

Plaintiff, a quadriplegic who is unable to walk, stand and use her arms and requires use of an electronic wheelchair when in public, sued defendants on October 2, 2004, pursuant to the ADA and California law.  Plaintiff alleged that she was discriminated against by unspecified architectural barriers and unspecified access violations at a Corning Taco Bell.  The boilerplate complaint was framed in six causes of action: the first for injunctive and declaratory relief pursuant to the  ADA.; the second for relief pursuant to the California Disabled Persons Act, Cal. Civ. Code §§ 54, 54.1, 54.3 & 55.; the third for relief pursuant to the state Unruh Civil Rights Act, California Civ. Code §§ 51 et seq.; the forth for relief pursuant to the state Health and Safety Act; the fifth for relief pursuant to the state Unfair Business Practices Act; and the sixth a state law negligence claim.[2]   In addition to various forms of injunctive and declaratory relief, plaintiff sought $100,000 in general and special damages.

Prior to trial, plaintiff abandoned most of her state law claims, including the state civil and health and safety code injunctive relief claim, the negligence claim and the actual damages claim.  (Doc. 17.) On the brink of trial, then the case settled, it was proceeding on injunctive relief claims pursuant to technical violations of the ADA and California law.  (Docs.

---

[2] Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981.)  A cursory review of court records reflect that counsel for plaintiff has filed over 450 disability rights cases in this court (with plaintiff filing approximately 51 of these cases) since 1998, and the complaint in this action is typical.

1   17& 26.)

2         On February 4, 2005, a consent decree was entered.  Plaintiff received $4,000.00,

3   plus reasonable costs and attorney's fees.  She obtained specific injunctive relief in the form of

4   defendant J.A. Sutherland, Inc.'s agreement to modify the "route of travel" to the Taco Bell

5   specifically identified in exhibit A , excepting a portion referenced on page four within one year

6   of notice and complete dismissal of the action.  The court filed an order regarding plaintiff's cost

7   bill on April 14, 2005.  The present motion for attorney's fees is the only issue remaining to be

8   determined in the case.

9         In short, keeping in mind that monetary success is not the only determinate of a

10  successful lawsuit, the undersigned must decide whether, in an ADA case in which the record

11  consent decree awarded plaintiff the statutory minimum damages of  $4,000.00 and minor and

12  relatively straightforward access improvements, it is reasonable to award $29,177.66 in

13  attorney's fees.

14  **II.**    **Standards for Awarding Attorney's Fees**

15        The ADA, the Unrah Act and the California Civil Code provide for an award of

16  attorney's fees to a prevailing party in a disability access action.  42 U.S.C. § 12205, Cal. Civ.

17  Code §§ 52, 54.3, 55.   The ADA allows the court "in its discretion" to award the prevailing party

18  "a reasonable attorney's fees, including litigation expenses and costs."  42 U.S.C. § 12205.  The

19  California Code of Civil Procedure section 1032, subdivision (b) entitles "a prevailing party...as a

20  matter of right to recover costs in any action or proceeding."   Costs includes attorney fees when

21  such fees are authorized by statute.  (California Code of Civil Procedure § 1033.5, subd.

22  (a)(4)(D), (10)(B) & (C)).  The Unruh Act provides that an entity which discriminates in

23  contravention of Section 51 is liable for "any attorney's fees that may be determined by the

24  court."  California Civil Code § 52(a).  The court "possesses discretion to determine the amount

25  of the fees, but not their entitlement."  Engle v. Worhtington, 60 Cal. App. 4th 628, 632 (1997).

26  ///

1   **III.    Discussion**

2          Initially, the undersigned cannot help but observe that in every disability claim of

3   which the undersigned is personally familiar, including this case, there is an implication made

4   that the ADA has spawned a cottage industry of professional ADA plaintiffs.[3]   These plaintiffs

5   make much, if not all, of their livelihood from entering public establishments in hopes of

6   discovering a technical violation of the ADA in order that a lawsuit may be brought.   Such

7   lawsuits inevitably result in attorney's fees far in excess of any good done by the lawsuit as well

8   as much financial hardship to the business enterprise, which is all to often a small, family owned

9   franchise or establishment.   Defendants argue that much of plaintiff's counsels' efforts were

10   motivated by attempts to increase the cost of this litigation and not to advance the underlying

11   goals of the ADA.   Plaintiff counters that the agreement reached in this case achieved the goal of

12   modifying defendants' restaurant, benefitting other patrons with disabilities, and that the award

13   of attorney's fees provides incentive to file ADA lawsuits.   However, the larger issue of whether

14   the ADA has spawned a cottage industry of "shake-down" lawsuits out of all proportion to the

15   initial aims of the ADA or whether it is a very necessary, if over-broad, mechanism to

16   accomplish social justice is for the legislature, not the undersigned, to decide.

17          **A.    Prevailing Party**

18          The first issue for decision by the court is whether plaintiff was the "prevailing

19   party."[4]   Under the Supreme Court's test, "'a plaintiff 'prevails' when actual relief on the merits

20

21          [3]As previously noted, plaintiff's counsel has filed over 450 disability access suits in this
District and at least fifty-one of those have been on behalf of the plaintiff in this case.

22          [4]In her reply brief to defendants' opposition to plaintiff's motion for attorney's fees,
plaintiff states that defendants dispute that she was a "prevailing party."   Although the court
23   believes that plaintiff is misconstruing defendants' argument—defendant is stating that plaintiff
cannot claim to be a prevailing party by virtue of the parties' consent decree while
24   simultaneously ignoring the provisions of the consent decree, which defendants argue,
specifically exclude expert witness fees.   However, to avoid any confusion, the court conducts an
25   analysis of whether plaintiff is a prevailing party.

26

1   of his claim materially alters the legal relationship between the parties by modifying the

2   defendant's behavior in a way that directly benefits plaintiff.'" Fischer v. SJB-P.D.Inc., 214 F.3d

3   1115, 1118 (9th Cir. 2000.)(citing Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).   "'A material

4   alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a

5   judgment, consent decree or settlement against the defendant.'" Id. (citing Farrar 506 U.S. at 113;

6   see also, Barrios v. California Interscholastic Fed'n., 277 F.3d 1128, 1134 n. 5 (9th Cir. 2002.)

7   (stating that when parties enter into a judicially enforceable settlement agreement, the plaintiff is

8   the prevailing party ).   A party can achieve "prevailing" status by establishing a "clear, causal

9   relationship between the litigation brought and the practical outcome realized." Rutherford v.

10   Pitchess, 713 F.2d 1416, 1419 (9th Cir. 1983).

11           Applying these standards to the facts of the instant case, it is clear that plaintiff is

12   a "prevailing party."   The consent decree entered into in this case requires defendants to make

13   various  modifications to the "route of travel" to the Taco Bell.   Defendants have one year to

14   make such modifications and should they fail to meet these obligations, plaintiff could return to

15   court to force defendants to uphold their end of the consent decree.   There is a clear and causal

16   relationship between plaintiff's suit and defendants' modifications of Taco Bell.   Rutherford, 713

17   F.2d at 1419.   Because plaintiff has an enforceable agreement that requires defendants to do

18   something that they otherwise would not be required to do, plaintiff is a "prevailing party."

19   Fischer, 214 F.3d at 1118.

20           **B.     Reasonable Fees**

21           Having determined that plaintiff is the prevailing party and therefore may be

22   entitled to attorney's fees, the undersigned must calculate a "reasonable" fee award.   This circuit

23   uses the lodestar method of determining a  reasonable attorney's fee award.   Widrig v. Apfel,

24   140 F.3d 1207, 1209 (9th Cir. 1998)(citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).   The

25   lodestar is calculated by multiplying the number of hours the prevailing party "reasonably"

26   expended in the litigation by a "reasonable" hourly rate.   Id.   "After making that computation,

the court assesses whether it is necessary to adjust the presumptively reasonable lodestar amount on the basis of the Kerr[5] factors that are not already subsumed in the initial lodestar calculation." Morales v. City of San Rafael, 96 F.3d 359, 364(9th Cir. 1996).  Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable fees component of the lodestar calculation are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained and, (5) the contingent nature of the fee agreement.  Id. at 364 n. 9.

**Reasonable Hours Billed**

As a preliminary matter, the undersigned notes that plaintiff's counsel bears the burden of supporting his request for fees and costs.  Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 112 (9th Cir. 2000).  Counsel here has "just barely" met the burden of supporting the attorney hours claimed by submitting a general eight page "slip listing" which, in very small print, lists in chronological order all hours spent by counsel and office personnel accompanied by a very general subject matter description.  Id.  As each page of the slip listing includes time expended by several different people, it appears that plaintiff's counsel expects the court or defense counsel to review the eight pages and breakdown and itemize the time expended by each of the persons identified, and then review the result to determine whether the hours claimed for each person are reasonable. The form of plaintiff's submission has made it very difficult and time consuming for the court to determine hours reasonably expended.  Where documentation is lacking in detail, the

---

[5] The twelve Kerr factors bearing on reasonableness are:
(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesireablity of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.
Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975).

court may either request additional documentation or reduce the fee to a reasonable amount.  Id; see also, Zeffiro v. First Pennsylvania Bank, 574 F.Supp 443 (ED. Pa 1983)(stating that the burden is on counsel to file adequately documented application for fees, detailing the time spent for each task and those who fail to meet that burden do so at their own risk).  The undersigned has opted to reduce the hours, as explained below.

(1) *Excessive Time Expended*

In arriving at the lodestar figure, the court should exclude hours that are "excessive, redundant, or otherwise unnecessary..." Hensley, 461 U.S. at 434.  The court need not scrutinize every entry in a slip listing and may instead check a sufficient number of entries to make reasonable calculations.  Evans v. City of Evanston, 91 F.2d 473, 476-77 (7th Cir. 1991)(upholding sampling procedure by the district court).  The circuits have never requested that the district courts set forth an hour by hour analysis of fee requests when calculating the number of reasonable hours expended on a case.  U.S. v. Metropolitan Dist. Comm'n, 847 F.2d 12, 16 (1st Cir. 1988).  Instead, when ascertaining hours reasonably expended, a trial court must make concrete findings and supply a "clear explanation of its reasons for the fee award." Hensley, 461 U.S. at 437; see also, McGinnis v. Kentucky Fried Chicken of California, 51 F.3d 805, 809 (9th Cir. 1995) (stating that a district judge need not make "rote recitation of the factors ...announced in Kerr."  Also helpful in the determination of reasonably expended hours are two other factors; overstaffing and the wide range of experience and skill among lawyers and (2) the complexity and novelty of the issues raised.  Cunningham v. County of Los Angeles, 879 F.2d 481, 485 (9th Cir. 1989).

Lynne Hubbard seeks attorney's fees for a total of 121.05 hours, which seems to be an unusually large amount of time given counsel's experience with disability access cases. Mr. Hubbard states that his normal billing rate for services performed in non-complex litigation is $300 per hour, although he has adjusted his hourly rate in this case to $250,  implicitly conceding that the instant litigation was not complex.  (Pl.'s Decl. filed Feb. 28, 2005 at 3:15-

7

1   18.)  Mr. Hubbard is an expert in ADA cases and has represented a large number of ADA

2   plaintiff's. (Id. at 4:3-7.)  He is accordingly intimately familiar with the cases and principles that

3   govern litigation in this area, and should have had little or no trouble understanding the issues

4   presented.  Expertise presumably results in efficiency.

5            As an initial matter, the undersigned considers whether certain hours billed by

6   Lynne Hubbard should be stricken as excessive billing.  As explained below, the undersigned

7   strikes the following attorney's fees.  The court is particularly troubled that the slip list indicates

8   a billing entry for $125 on April 29, 2004 for Lynn Hubbard for "disclosure of plaintiff's expert

9   Joe Card."  The timely disclosure of plaintiff's expert was vigorously disputed in this case. (see

10  e.g. Def.s' Decl. filed March 25, 2005, Ex. 23.)  During that dispute, Alisha Petras, one of Mr.

11  Hubbard's paralegals, asserted in a letter to defense counsel that "[she] was responsible for

12  serving experts on other parties" and that on April 29, 2004, she also designated experts . (Def.s'

13  Decl. filed March 25, 2005 Ex. 22.)  If Ms. Petras designated experts on April 29, 2004, there is

14  no reason why Mr. Hubbard would also bill for this service.  Accordingly, the $125 fee for 0.5

15  hours spent by  Mr. Hubbard designating an expert is subtracted from the fee request.

16           The court is also troubled by the $1,901.25 in fees generated by plaintiff's counsel

17  over the disputed and undisputed facts in the proposed joint statement.  On December 3, 2004,

18  Lynne Hubbard billed $500 for services described as "proposed joint statement  RE: undisputed

19  and disputed facts."  On December 7, 2004, there is a $15.00 charge for faxing the proposed joint

20  statement to Scott Hubbard, a $26.25 charge for drafting a letter to defense counsel regarding

21  Scott Hubbard's handwritten changes to the proposed disputed and undisputed facts, and a $350

22  charge for Scott Hubbard's review of and changes to the joint statement's disputed and

23  undisputed facts.  On December 9, 2004, Mr. Hubbard lists charges for again faxing Scott

24  Hubbard the same document, his review of and another letter to defense counsel regarding Scott

25  Hubbard's changes. On December 7, 2004  Lynn Hubbard billed $150 for reviewing a letter from

26  defense counsel regarding the changes proposed by Scott Hubbard,  and on December 8, 2004

8

Lynn Hubbard billed $250 for reviewing a letter from defense counsel regarding the changes proposed by Scott Hubbard.   On December 9, 2004, there is a $250 charge for Lynn Hubbard reviewing a letter from defense counsel regarding the final version of the joint statement.   On December 10, 2004, there are fees associated with  faxing Scott Hubbard the same document and another letter to defense counsel regarding Scott Hubbard's changes.

Defense counsel disputes Lynn Hubbard's $500 fee for an activity described as "proposed joint statement re: undisputed and disputed facts," arguing that the document was prepared almost entirely by defense counsel.  The fact that Scott Hubbard expended so much time reviewing and making changes to the document and the fact that defendant ultimately filed the document with the court support this contention.  Accordingly, the $500 fee for Lynn Hubbard for 2 hours in an activity described as "proposed joint statement re: undisputed and disputed facts" is subtracted from the fee request.  Its is somewhat unusual that Lynn Hubbard would bill for time spent reviewing letters from defense counsel in light of the fact that Scott Hubbard was the attorney apparently assigned to make changes to the joint statement.  In short, the court finds that Lynn Hubbard's work was duplicative and subtracts his fees of $600 for 2.4 hours expended reviewing letters from defense counsel regarding the joint statement from the fee request.  McGinnis, 51 F.3d at 808 (reducing fees for duplicative costs).

Subtracting 4.9 hours from Mr. Hubbard's fee request[6] leaves a request for fees for 60.5 hours.   The undersigned next considers whether the remaining hours billed by Mr. Hubbard should be reduced by a percentage for vagueness, irregularity or excessiveness. Based upon spot-checking the slip listing, the vagueness of the time records submitted, and considering the expertise of plaintiff's counsel, Lynn Hubbard, and that this case did not present issues significantly different from the run-of-the-mill ADA case, the undersigned finds that 30% of his

[6]As all the time subtracted from the fee request was at Lynn Hubbard's billing rate of $250, the court has subtracted those hours from the 65.55 hours @ $250/hr (leaving 60.65 hours @ 250/hr)  requested by Mr. Hubbard instead of subtracting from the overall total number of hours.

attorney's fees must be deducted from the lodestar for vagueness, irregularity or excessiveness. This deduction pertains to entries where more time was expended than was reasonably necessary to perform the task at issue, entries where time was expended by experienced counsel on matters typically handled by a less experienced attorney, entries where time was expended by paralegals on matters typically handled by less specialized office staff and entries that did not adequately inform the court about the task being performed.

For example, it is unclear why Lynn Hubbard needed to spend one hour drafting the boilerplate complaint in this case, when it was identical, except for the names of defendants and the establishment,  to the thirty others his client in this case had filed in this district.  For the same reasons, the undersigned cannot understand why Mr. Hubbard would need six tenths of an hour to draft a fee agreement for plaintiff when he admits she is a regular client of his office. (Pl.'s Decl. filed February 22, 2005 at 6:12-15.)  Mr. Hubbard also fails to explain why he billed for two separate site inspections, one on September 9, 2004 and another on July 27, 2004, especially in light of the fact that Mr. Hubbard retained an expert and charged for one hour on September 29, 2004 to review the "preliminary site report."   Mr. Hubbard also spent a fair amount of time on paper administrative matters which would generally have been handled by a secretary or at least by a associate billing at a lower rate.  Specifically, Mr. Hubbard logged two tenths of an hour on February 10, 2004 to review an order of reassignment and this was after his "legal assistants" had earlier that same day logged a commutative six tenths of an hour reviewing the same document.  This same billing pattern was repeated on October 5, 2004.

The undersigned further finds that it is appropriate to deduct a percentage of the paralegal fees requested for vagueness, excessiveness or irregularity.  For example, it is unclear why it was necessary to have Bonnie Vonderhaar and Alisha Petras, both paralegals who bill at a higher rate then clerical assistants, fax correspondence to various parties, including defense counsel and capital mail courier, especially in light of the fact that it generally took at least fifteen minutes to fax each document.  Also mystifying is why Alisha Petras was charged with

1  making a large bulk of phone calls required by this litigation.  It is particularly illuminating that

2  one such call was with defense counsel's secretary concerning available dates for plaintiff's

3  deposition.  If defense counsel's secretary could complete such a task for defense counsel, there

4  is no reason why a secretary from Mr. Hubbard's office could not have performed the same

5  function.

6          The court will not continue to scrutinize individual entries in the slip list, but

7  based on the factors mentioned above, it will reduce by 30% the remaining 60.5 hours submitted

8  by Lynne Hubbard for a total reduction of 18.15 hours; resulting in a total of 42.35 hours.  The

9  court will not reduce the hours of Scott Hubbard.  Due to use of paralegals for functions

10 traditionally performed by secretarial staff, and in light of the substantial attorney time expended,

11 the court will reduce the 22.95 paralegal hours by 40% for a total reduction of 9.2 hours;

12 resulting in a total of 13.75 hours.  See, e.g., Missouri v. Jenkins, 491 U.S. 274, 288 n. 10 (1989)

13 (stating that "purely clerical or secretarial tasks should not be billed at a paralegal rate.")

14                      (2)      *Degree of Success Achieved*

15          Having determined the reasonable hours expended based on an excessiveness

16 analysis, the undersigned must now consider whether the reduced hours remain justified based on

17 the degree of success plaintiff achieved in this litigation.  Originally, plaintiff sought $100,000 in

18 general and special damages, punitive damages and various forms of injunctive relief.  (Pl.'s

19 Compl. at 16-17.)  Plaintiff abandoned her actual and punitive damages claims and, in the

20 settlement agreement, accepted the minimum statutory damages of $4,000 plus modification of

21 the Taco Bell restaurant.  That plaintiff received a relatively small amount of damages to settle

22 the statutory damages claims is not necessarily fatal to finding that she achieved a level of

23 success commensurate with the hours found thus far to be reasonable.  "Because damages awards

24 do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend

25 for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial

26 monetary relief."  City of Riverside v. Rivera, 577 U.S. 561, 574 (1986).  According to Hensley,

1  however, there is no precise rule for making these determinations.  Hensley, 461 U.S. at 436.

2  Hensley states:

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.

7  Id.

8       The undersigned finds that the relatively small amount of statutory damages and

9  the relatively minor specific injunctive relief detailed in the consent decree do not represent a

10 significant or substantial degree of success on plaintiff's claims.  Although civil rights cases

11 undoubtedly may represent significant public benefit, the undersigned cannot conclude, in light

12 of the numerous ADA and other disability rights litigation which has been filed in the federal

13 courts, that the relief achieved by plaintiff (a sign, a grooved boarder along the top of the

14 handicapped ramp and a slight widening of the shared access aisle between van accessible

15 parking spaces) represents a significant victory in advancing disability rights or public awareness

16 of those rights. While plaintiff's victory was more than "technical," see, Fischer, 214 F.3d at

17 1120 (discussing purposes of ADA litigation), plaintiff nevertheless achieved less than a

18 significant degree of success in the terms documented in the consent decree.  Hensley, 461 U.S.

19 at 436.

20       Based on the foregoing discussion,  the court further reduces all hours expended

21 by plaintiff's counsel by 20%:

22       Lynn Hubbard– (as reduced above to 42.35) reduced further by 20% = 33.9

23       Scott Hubbard– 9.45 hours reduced by 20% = 7.56

24       Paralegals—13.75 hours (as reduced above) reduced further by 20% = 11

25            (3)   *Rejection of Defendants' Rule 68 Offer*

26       Defendants contend that plaintiff's counsel's fees incurred after defendants' June

12

2004 settlement offer should be barred by Federal Rule of Civil Procedure 68's cost-shifting provision.  Rule 68 provides that if the judgment finally obtained is less favorable than an earlier settlement offer, the offeree must pay the costs incurred after the making of the offer.  In June of 2004, defendants offered to settle this case for approximately $13,000.  At that time, most of the violations listed in the complaint had already been corrected by defendants.  Plaintiff ultimately accepted $4,000 to settle the case and defendants agreed to make some relatively minor additional modifications.  In the seven months between the settlement offer in June and the settlement agreement in January, plaintiff incurred approximately $10,000 in fees.

However, under the plain language of Rule 68, costs are only shifted when the statute authorizing the collection of fees defines fees as an item of costs, such as 42 U.S.C. § 1983 & 1988.  Marek v. Chesney, 473 U.S. 1, 9 (1985).  The ADA provides that a prevailing party may be awarded a "reasonable attorney's fee, including litigation expenses and costs." 42 U.S.C. § 12205.  This provision does not define costs to include attorney's fees.  Accordingly, the undersigned declines to apply Rule 68's cost-shifting analysis to plaintiff's fee request.

**Reasonable Hourly Rate**

Having determined the number of hours reasonably expended, the court next turns to a determination of a reasonable hourly rate.  Whether a requested hourly rate is reasonable normally must be established by the attorney claiming fees, who should submit affidavits and other evidence tending to show that the requested rates are in line with those of lawyers of reasonably comparable skill, experience and reputation.  Blum v. Stenson, 465 U.S. 886 (1984). Prevailing market rates in the relevant legal community determine whether the requested hourly rate is reasonable.  "[T]he choice of a relevant community and the prevailing rate in that community are crucial to establishing the amount of attorney's fees granted." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997). The court's first task is to determine the applicable legal community from which the comparable rates are to be applied.

The undersigned finds that the rate of $250 per hour adequately reflects the

prevailing market rate in this district for an experienced attorney in an ADA case.  Accordingly,

the court will compensate Lynn Hubbard, an experienced disability rights litigator, a fee

computed at the rate of $250 per hour.

Moving down from that figure, the undersigned considers the appropriate rate for

compensation of Scott Hubbard, an associate attorney with the Hubbard law firm.  In his

declaration supporting his motion for attorney's fees, Lynn Hubbard states that "for this case,

[he] charged $175 per hour for [Scott Hubbard's] services.  (Pl.'s Decl. filed February 28, 2005

at 4:21-25. ) As a basis for this rate, Mr. Hubbard states that Scott Hubbard "is recognized as an

expert in ADA law by two district judges" in this District.  Id.  In his reply brief in support of his

motion for attorney's fees and costs, Mr. Hubbard states that "the basis of [his request to raise

Scott Hubbard's rate from $150 to $175] is simple–Scott Hubbard has discussed state and federal

disabled access laws...with this court on three separate occasions and demonstrated his firsthand

knowledge of both." (Pl.'s Reply Brief at 6:5-9.)  Mr. Hubbard goes on to state that "[Scott]

Hubbard will gladly accept an hourly rate commensurate with other associate lawyers ($150) if

the court knows of (or has seen) any other party, attorney, or expert witness with greater

knowledge of disabled access law and Eastern District Practice.  If the court is unable to do so,

Mr. Hubbard would ask that the court increase his hourly rate to a figure that reflects his

knowledge, expertise, and skill ($175)." (Id. 6:11-15.)

As previously noted, whether a requested hourly rate is reasonable normally must

be established by the attorney seeking the fee.  Blum, 465 U.S. at 896.  A reasonable attorney fee

is one that is adequate to attract competent counsel but does not create a windfall to attorneys.

Id.  Therefore, the critical inquiry is whether a "paying client" would pay the rate of $175 to Scott

Hubbard.  Davis v. City of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992).   Generally, to

aid the court in making this determination, the attorney produces satisfactory evidence, in

addition to his own affidavits, that this in indeed the market rate.  Blum, 465 U.S. at 896 n. 11.

Here, Mr. Hubbard has provided no evidence to assist the court other than his own conclusory

1   statements.  It is Mr. Hubbard's responsibility to justify to the court the increase of Scott

2   Hubbard's fee award.  It is not, as Mr. Hubbard suggests, the court's responsibility to justify

3   declining to increase his fee. Eastern District Judges have repeatedly found that the reasonable

4   rate in the Eastern District for an associate is $150 per hour.  See, e.g., Loskot, et al. v. Pine St.

5   Sch., 00-2405 DFL JFM, O'Campo v. Thrifty Payless, Inc., et al., 02-0511, but see, Hubbard v.

6   Twin Oaks Health and Rehabilitation Center, 03-0725 LKK CMK (awarding Scott Hubbard

7   $175 per hour for two hours of work, where there was no challenge to the $175 per hour rate).

8   The undersigned finds that no reasonable economic evidence has been submitted to justify an

9   increase in Scott Hubbard's fees.  Accordingly, the court compensates Scott Hubbard at a rate of

10  $150 per hour.

11          The undersigned next considers defendants' challenge to the rate of $65 per hour

12  charged for "legal assistants."  Defendants contend that Hubbard office improperly seeks to

13  recover for secretarial services—tasks such as creating client files, reviewing and updating

14  calendars, reviewing and updating files and telephone calls between secretaries.  Plaintiff

15  responds that the Ninth Circuit and the United States Supreme Court have allowed attorneys to

16  bill separately for paralegal time, clerical work and secretarial time under 42 U.S.C. § 1988.

17  (Pl.'s Reply Brief at 11:5-7.)  Plaintiff also cites several Eastern District Cases which she states

18  support an award for fees for clerical staff in ADA cases.  (Id. at 11:9-12, citing Loskot, et al., v

19  Pine St Sch, et al., 00-2405 DFL JFM.).  Plaintiff's counsel has provided detailed descriptions of

20  the qualifications of five persons[7] who are "legal assistants" in his office.  While their

21  qualifications are impressive, none of the five have any specialized legal training and from the

22  descriptions, perform work that would be characterized as secretarial.

23

24          [7]The court notes that in Lynn Hubbard's original declaration in support of his motion for
    costs, he only lists three "legal assistants"—Crista Duncan, Jamie Stagner and Melinda Adams.
25  (Pl.'s Decl. 5:8-22.)  In his reply brief, Mr. Hubbard, lists two additional legal assistants, MeLisa
    Dodson and Elva Garcia, leaving the court to wonder why these two were not mentioned in his
26  original declaration.  (Pl.'s Reply Brief at 11:25-28–12:1-24.)

1          In <u>Missouri v. Jenkins</u>, 491 U.S. 274 (1989), the Supreme Court stated that it

2   would hardly be in "accord with Congress's intent to provide a 'fully compensatory fee' if the

3   prevailing plaintiff's attorney in a [42 U.S.C. § 1983] civil rights lawsuit were not permitted to

4   bill separately for <u>paralegals,</u> while the defense attorney in the same litigation was able to take

5   advantage of the prevailing practice and obtain market rates for such work." <u>Id.</u> at 287 (emphasis

6   added).   However, in response to Missouri's "slippery slope" argument that compensation for

7   paralegals at rates above cost would lead to attorney's next trying "to bill separately–and at a

8   profit–for such items as secretarial time, paper clips, electricity and other expenses," the Court

9   stated that attorney's seeking fees under §1988 would have no basis for such expenses unless this

10  were "the prevailing practice in the local community." <u>Id.</u> at 287 n. 9.  The Court further stated

11  that "the safeguard against the billing at a profit of <u>secretarial</u> services and paper clips is the

12  discipline of the market." <u>Id.</u> (emphasis added).

13         Plaintiff's counsel has made no showing that it is the prevailing practice in the

14  local community to bill, at a profit, for secretarial tasks.  The court has carefully examined the

15  three cases cited by Plaintiff in support of her contention that the Eastern District has awarded

16  fees for clerical staff in ADA cases.   The undersigned notes that in <u>Loskot et al. v. Pine St. Sch.,</u>

17  <u>et al.,</u> 00-2405 DFL JFM, Judge Levi awarded $125 dollars for clerical staff.  It is not clear from

18  the order the number of hours expended or the billing rate for the clerical staff.  In <u>Pickern, et al.</u>

19  <u>v. Marino's Pizza & Italian Restaurant, et al.,</u> 01-1096 WBS GGH, Judge Shubb awarded

20  plaintiff's $405.00 for paralegal costs, but made no award for clerical staff.[8]  In <u>Feezor v.</u>

21  <u>Comfort Inn Vallejo</u>, 03-0540 LKK PAN, Judge Karlton ordered that the court would allow $580

22  in fees for "paraprofessionals."  The undersigned cannot determine whether "paraprofessional" is

23  to mean paralegal or paralegals and secretarial staff.  In any case, it is not clear from the three

24

25         [8]This differs somewhat from the findings and recommendations filed by Judge Hollows
    on October 1, 2002.  In the findings and recommendations, Judge Hollows notes that plaintiff's
26  sought $125 for clerical staff, but (which was listed under paralegal fees, for a total of $562 in
    paralegal fees) and recommended awarding $562 for paralegal fees.

1  cases cited by plaintiff that the prevailing practice in this district is to award fees for secretarial

2  work. See also, Hubbard v. Twin Oaks Health and Rehabilitation Center, 03-0725 LKK CMK

3  (stating although defendant objected to certain costs as secretarial in nature, the court would not

4  "scrutinize each of the 171 entries pointed to by defendant to determine which of them are

5  secretarial in nature and therefore, not recoverable as alleged by defendant.") Indeed, the $125

6  allowed for clerical staff costs in the aforementioned orders differs greatly from the $1,404 in

7  "legal assistant" fees that plaintiff seeks in this action.

8         The tasks performed by the legal assistants include reviewing and updating the

9  calendar regarding notice of taking plaintiff's deposition.  This task took fifteen minutes and cost

10  $19.50.  A spot-check of the slip list reveals that, in general,  every update of the calendar took

11  fifteen minutes and cost $19.50.  The undersigned cannot find that the legal market in this area

12  would bear such a cost. Missouri, 491 U.S. at 287 n. 9.  Plaintiff has produced no evidence which

13  supports that such an award is the prevailing market rate.  United Steel Workers of America v.

14  Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) (stating that affidavits of plaintiff's

15  attorney regarding prevailing fees in the community and rate determinations in other cases are

16  satisfactory evidence of the prevailing market rate).  In fact, given the large amount of attorney

17  time claimed as well as the large amount of time expended by paralegals, the fee request for the

18  clerical work of legal assistants serves to "spiral the cost" of disability rights litigation, which

19  cannot have been Congress's intent in providing for attorney's fees in the statute.  See, e.g.,

20  Cameo Convalescent Center, Inc. v. Senn, 738 F.2d 836, 846 (7th Cir. 1984)(cert denied

21  1985)(stating that reducing the spiraling costs of civil rights litigation furthers the policy

22  underlying the civil rights statutes).   As plaintiff has not shown that billing, at a profit, for

23  secretarial time is the prevailing practice in the local community, the undersigned declines to

24  make such an award here.  The $1,404 requested for "legal assistants" performing tasks which

25  are secretarial in nature is subtracted from the fee request.

26         As there has been no challenge to the paralegal rate of $75 per hour, the

1   undersigned accepts that rate.

2   **Lodestar Calculation**

3        Based on the foregoing analysis and calculations, the lodestar calculations is as

4   follows:

5        Lynn Hubbard–33.9 hours x $250/hr       =   $8,475.00

6        Lynn Hubbard–1.5 hours travel x 150/hr[9] =   $225.00

7        Paralegals—13.75 hours x $65/hr         =   $893.75

8        Total: $9,593.75

9        **C.   Litigation Expenses and Costs**

10       As a preliminary matter, the undersigned notes that plaintiff filed a bill of costs on

11  February 8, 2005, and on April 14, 2005 the court filed an order allowing costs of $599.49

12  pursuant to 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d).  See also, L.R. 54-292.

13  In this motion, plaintiff seeks an additional $7,748.66 in litigation expenses and costs.   Of the

14  litigation expenses and costs, the bulk, $5,100.62, is for fees of expert Joe Card of JPC

15  Contracting.  The remainder of the costs are for court fees, process servers, court reporters,

16  courier/overnight mail and other litigation expenses.

17       The ADA authorizes an award of expert witness fees to the prevailing party.

18  Lovell v. Chandler, 303 F.3d 1039, 1058 (9th Cir. 2002).  The instant case presents a unique

19  circumstance–plaintiff is seeking to recover fees for an expert that defendants contend was never

20  properly disclosed.  At the time the case settled, defendants had an outstanding motion in limine

21  seeking to preclude plaintiff's expert, Joe Card from testifying on the grounds that he was timely

22  disclosed.  Settlement of the case precluded the court's decision on this issue.

23       The Status Order filed on February 10, 2004 ordered the plaintiff to "designate in

24  writing and file with the court, and serve upon all other parties, the names of all experts that they

25

26       [9]The parties agree that Lynn Hubbard's hourly rate for travel should be reduced to that of
    an associate attorney; $150 per hour.  (Pl.'s Reply Brief at 6:17-18.)

1  propose to tender at trial not later than June 24, 2004." (Doc. 14 at 3:4-7.)  A review of the

2  docket sheet shows that plaintiff did not designate Joe Card by the June 24, 2004 deadline.  Only

3  on December 2, 2004, did plaintiff designate Joe Card as an expert witness.  Therefore, the

4  undersigned finds that Joe Card's testimony would not have been admissible at trial.  To allow

5  plaintiff to recover the fees for an exert witness who was not properly disclosed would

6  contravene the ADA's goal of allowing recovery of reasonable attorney's fees.  In determining

7  how other elements of attorney's fee is calculated, a district court should look to the marketplace

8  to determine what is reasonable. <u>Missouri</u>, 491 U.S. at 285.  The undersigned cannot imagine that

9  an attorney billing a private client would include the cost for an expert who could not be used at

10  trial due to the failure of the attorney to properly disclose the expert.  Allowing such a recovery

11  by virtue of a settlement would be entirely inappropriate.  Accordingly, the cost of $5,100.00 for

12  expert witness Joe Card will be disallowed.

13         The undersigned next considers the remaining litigation expenses requested by

14  plaintiff.  Plaintiff divides these expenses into court fees, process servers, court reporters,

15  courier/overnight mail and "other litigation expenses."   In her February 8, 2005 bill of costs,

16  plaintiff requested $150.00 for court filing fees, $64.00 for service of summons and subpoena

17  and $630.39 for fees of the court reporter, (doc. 45 at 1)  and the court considered and ruled on

18  these requests in its April 14, 2005 order taxing costs.  Plaintiff now requests these same

19  expenses in the instant motion as "litigation expenses." (Decl. of Lynn Hubbard filed February

20  28, 2005 at 6:2-5.)  Accordingly, the undersigned disallows the request for $150 for court fees,

21  $64 dollars for service of summons and $630.39 for court reporters.  Plaintiff requests $1,655.33

22  for "other litigation expenses" and directs the court's attention to exhibit C to Lynn Hubbard's

23  February 28, 2005 declaration in support of costs for itemization.  (Decl. of Lynn Hubbard filed

24  February 28, 2005 at 6:5-6.)  However, Mr. Hubbard fails to provide any support for these

25  requests. <u>See</u> <u>e.g.</u>, L.R. 54-292(b) (stating that a cost bill shall be accompanied by an affidavit

26  from counsel that the costs claimed are allowable by law, are correctly stated and were

necessarily incurred.)  The very vague descriptions of the "other litigation expenses" provided in the itemized list are not enough to allow the court to determine whether such expenses were necessary or allowable by law.  Accordingly, the $1,655.33 for "other litigation expenses" is disallowed.

Finally, the undersigned considers plaintiff's  request of  $148.82 for courier/overnight mail.   The expense for courier/overnight mail is itemized in Exhibit C to Lynn Hubbard's February 28, 2005 declaration in support of costs.  However, the descriptions of the expense in the  itemized list is too vague for the undersigned to determine whether such expenditures were reasonably necessary to this litigation.  See e.g., L.R. 54-292.  For example, the itemized list reveals a cost of $45.00 for "courier filing to court" on January 21, 2004.  However, a review of the court's docket sheet does not indicate any filings by plaintiff near that date.[10]  Similarly, a review of the court's docket does not reflect any filing by plaintiff on or near December 17, 2004, although she claims a cost of $45.35 for "courier filing to the court."  Accordingly, the $148.82 requested for courier/overnight mail is disallowed.

**IV.    Conclusion**

IT IS ORDERED for the reasons set forth above, plaintiff is awarded attorney's fees in the amount of $9,593.75 .  Her request for additional litigation expenses and costs is denied.

DATED:  May 6, 2005.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

---

[10]The docket indicates that on 1/22/04 defendants filed a status report and a discovery plan.  However, plaintiff filed nothing with the court on or around 1/21/04.   Her closest filing was a status report which was filed on 1/13/2004.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26